### NILES *v.* MEEKER.

WATERS AND WATERCOURSES—DAMS—SUPERVISORS — NECESSITY — INJUNCTION.

> The building of a dam by the board of supervisors, purporting to act under authority of Act No. 202, Pub. Acts 1911 (2 Comp. Laws 1915, § 7377 *et seq.*), raising the level

of the water in a lake in said county, without first de-
termining its natural height and level and that the main-
tenance of said level was necessary in order to improve
and maintain navigation thereon, or to promote the public
health or welfare, as required in said act, will be re-
strained at the instance of property owners showing that
their land will be damaged thereby.

Appeal from Van Buren; Des Voignes (L. Burget),
J. Submitted April 28, 1922. (Docket No. 54.) De-
cided July 20, 1922.

Bill by Frank Niles and others against Charles P.
Meeker and others to enjoin the erection of a dam.
From a decree dismissing the bill, plaintiffs appeal.
Reversed, and decree entered for plaintiffs.

*L. J. Lewis,* for plaintiffs.

*Thomas J. Cavanaugh,* for defendants.

STEERE, J.   This bill was filed to restrain con-
struction of a dam at the outlet of Saddle lake in
Columbia township, as contemplated under action
taken by the board of supervisors of Van Buren county
in which it is located.   Saddle lake is of considerable
extent, having an island in its southern portion; im-
mediately adjoining on the south side of the lake is
an extensive acreage of low land; close along its east
and west sides are woodlands and comparatively dry
shores upon which are a number of summer cottages
and resorts.   Back of these and around the north,
east and west sides of the lake are farms.   Plain-
tiffs Frank and Henry Niles and John Piotzkowski
are farmers, owning low lands extending back from
the south shore of the lake but little above its
present level and affected by it.   The township of
Columbia is a party plaintiff herein because of its
interest in a filled highway crossing the low land

upon the south end of the lake for a distance of nearly half a mile.

Plaintiffs complain that the level at which it is proposed to erect the dam sought to be restrained will raise the waters of the lake to where they will flood, or saturate and injure, the low lands adjacent on the south and the highway crossing them. Defendants claim authority to erect this dam under action taken by the board of supervisors of said county pursuant to Act No. 202, Pub. Acts 1911, 2 Comp. Laws 1915, § 7377 *et seq.*) ; that so establishing the permanent level of those waters will be for the common good and is a necessary public improvement.

Section 1 of said act provides:

"The board of supervisors of any county in which the whole or major part of the waters of any inland navigable lake is situated, may, in order to improve or maintain navigation thereon, or to promote the public health or welfare, determine the natural height and level of the waters of such inland navigable lake, and construct and maintain sufficient dams or embankments upon and along the shores of such lake to keep and maintain the water in such lake at its natural height and level."

On September 29, 1919, some 30 citizens of Columbia township who stated they were "owners of summer houses, boat liveries, boat houses and other places of convenience and amusement to the public" situated on the shores of said lake, filed a petition with the clerk of the board of supervisors of Van Buren county to proceed under said act for determination of "the natural height and level" of the waters of Saddle lake and to provide for construction of a sufficient dam with embankments at the outlet for the purpose of maintaining the waters thereof at the level so established. The petition represented to the board that in former years the lake had been several times lowered to its detriment and they were informed it

was proposed by certain parties to lower it further, that the subject of raising and lowering said lake had for a number of years past caused dissention among interested citizens living or owning property in the vicinity of the lake and the question should be authoritatively determined, etc.

This petition was laid before the board of supervisors at its annual meeting begun October 10, 1919. A committee consisting of six members was appointed by the chairman of the board, on proper motion, for the purpose of investigating, considering and reporting upon the petition. During that October session this committee visited Saddle lake, and a connecting lake called Pugsley, accompanied by the county engineer, Mr. Cox, and reported to the board the result of their investigation. In this report, made on October 24, 1919, the committee stated and recommended as follows:

"We investigated their former level, intermediate and former level. We obtained information in regard to Saddle lake from several persons whose interests were affected by the lowering or raising of the present level of this lake both pro and con. Our eyes plainly detected three, if not four, former levels to which this lake has responded during the last fifty or one hundred years either by force of nature, drainage or both combined.

"We are of the opinion that Saddle lake should be raised without seriously damaging any of the abutting property, and if such were ordered done by this board it would be for the benefit of a large number of taxpayers around the lake. We further believe that if the level of the lake is raised as aforesaid the resort business of this lake will grow rapidly and the assessed valuation of this township and county will be increased far beyond what it is at the present time.

"Your committee would recommend to this board that a proper survey be made by Mr. Cox of these lakes and ascertain just how far up the receding banks the water would come if the level of the lakes

were raised twelve inches, and also how much farther if raised 18 inches.    After the committee has this information we will make our final recommendations to this board."

At a session of the board of supervisors commencing January 5, 1920, the report of engineer Cox of a survey made by its order was presented and the committee appointed at the October session to investigate the matter proceeded to consider further the petition. On January 9, 1920, it reported to the board of supervisors as follows:

"Your committee on Saddle lake recommend that the level be established eight inches above the level of the lake at the time Mr. Cox made the survey.    We further recommend that a dam be constructed under the supervision of a competent engineer according to the survey made by Mr. Cox, and the cost to be borne by the parties who petitioned to have a level established.    We further recommend that all of the papers, surveys and maps appertaining to Pugsley's and Saddle lakes be filed with the county clerk for future reference."

On a motion duly made this report was then "adopted" by the unanimous yea and nay vote of the board of supervisors, and duly recorded.

While these proceedings were pending plaintiffs, who had received no official notice of the same, learned of the petition and during the October session, 1919, appeared before the board and unavailingly protested against such action as was prayed for in the petition, filing a written remonstrance signed by themselves and over 130 other taxpayers of the township of Columbia.

Bearing upon the question of their protest the following agreed facts appear in the case:

"(1)    That Saddle lake drain commencing at the outlet of Saddle lake on the north end thereof and extending to the M. C. R. R. tracks to the northward,

a distance of 80 to 100 rods, was laid out, established and constructed about the year 1882 by the drain commissioner of Columbia township.

"(2) That the property of the plaintiffs and other property round about and near Saddle lake, together with the township at large, was assessed for the cost of the drain.

"(3) That about the years 1892 and 1893, the same property was specially assessed for cleanout, and widening and deepening proceedings carried on by the township drain commissioner.

"(4) That about the year 1919, property owners around and about Saddle lake, including the property of these plaintiffs, was specially assessed for an extension of Saddle lake drain which was then built and constructed by the county drain commissioner, said extension commencing at the said M. C. R. R. tracks and running north to Allegan county, or thereabouts, and that the said extension was called, 'Saddle lake drain extension,' and carries the waters which come from Saddle lake down through Saddle lake drain.

"(5) That since the construction of Saddle lake drain in 1882, this drain has been the outlet of Saddle lake, and has been working and carrying the waters of Saddle lake through it all the years since that date and up to this time.

"(6) That in the office of the county drain commissioner of Van Buren county, have been found certain records and papers pertaining to 'Saddle lake drain;' that these records, etc., consist of:

"(a) A book of 240 pages, entitled, 'Record— Columbia township.'

"(b) A file jacket, containing 3 papers; said jacket being marked '78, Saddle lake, Columbia township,' and the papers therein being designated:

"(1) Application for cleaning out, etc.
"(2) Determination of assessment, etc.
"(3) Apportionment of benefits."

Upon the hearing of this suit the relief prayed for by plaintiffs was denied and their bill dismissed. Bringing the case here for review, they urge as grounds why the relief asked for should have been granted, that proceedings before and action taken by

the board of supervisors were unlawful, irregular and not in compliance with the provisions of Act No. 202; that plaintiffs had gained property rights, by payment of taxes to drain their lands, user and occupation, which would be seriously damaged by the construction of the proposed dam raising the water to a height which would again flood their properties to a greater or less degree; Act No. 202 is unconstitutional if construed to permit the taking of property of private citizens for public use without due process of law and just compensation, for which no provision was made.

Plaintiffs' contention that the proceedings taken by the board of supervisors is irregular and void demands first attention. Their objections are directed to the proposition that no resolution or motion was ever presented to or adopted by the board declaring the building of the proposed dam and raising the level of the lake as proposed a public necessity, nor that it was necessary to change the natural level of the lake in order to improve or maintain navigation thereof, or to promote the public health or welfare, that no place was designated by the board in any of its proceedings where the dam should be constructed and no determination was made by the board, or its committee, of the natural height and level of the lake, and no steps for condemnation of plaintiffs' land or the township highway were ever ordered by the board, or any provision made for compensation therefor.

The authority given the board of supervisors by Act No. 202 is limited to determining "the natural height and level of the water" of this lake, and to "acquire, in the name of the county, by gift or purchase, or by condemnation proceedings, any existing dam which may affect the level of the waters in such lake, and all sites for dams or embankments or other lands," etc., needful or convenient to carry out the purposes of the act, which are to aid navigation or

promote public health. A definite determination of need for that purpose and of the normal shore line or "natural height and level" of such lake is made the basis of all which follows. Not only did the board of supervisors fail to find the natural level, but it made no declaration that any action to that end was necessary "in order to improve or maintain navigation thereon, or to promote public health or welfare." When the petition was presented to the board it turned the matter over to a committee and later simply "approved" the report of such committee. The report contained no suggestion of what the "natural height and level" of the lake was, nor its ordinary, normal average or mean level, at any time or for any length of time, and recommended an arbitrary, artificial level higher than that found at a certain date by an engineer whose report shows no attempt on his part to determine the natural level. The only reason given by the committee in its report for recommending such arbitrary level was that the resort business would thrive if it was adopted "and the assessed valuation of this township and county be increased," which was outside the scope of the act. A resolution of determination within the purpose of the statute was a jurisdictional prerequisite to further proceedings.

As this case must be reversed for the foregoing reasons and Act No. 202, Pub. Acts 1911, has since been repealed by Act No. 377, Pub. Acts 1921, upon the same subject, it becomes unnecessary to discuss other questions raised.

The decree appealed from dismissing plaintiffs' bill will be set aside, with costs to them, and one entered here granting the relief prayed for.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.