*In re* PETITION OF LENAWEE COUNTY SUPERVISORS AS TO WATER LEVEL OF DEVILS AND ROUND LAKES.

1. WATERS AND WATERCOURSES—NATURAL LEVEL.

Term "natural" level as used in statute for maintenance of a constant level of waters of inland lakes is construed as the "normal" level (1 Comp. Laws 1929, § 3837 *et seq.*).

2. SAME—CONSTRUCTION OF STATUTES.

Purpose of statute giving circuit court jurisdiction in proceedings for maintenance of constant level of waters of inland lakes is to provide against unseasonable and excessive operation of such laws of nature as precipitation, evaporation or seepage (1 Comp. Laws 1929, § 3837 *et seq.*).

3. SAME—FINDING OF COURT—EVIDENCE.

Finding of court that natural level of two inland lakes was at a given height above sea level *held*, supported by testimony in proceeding by supervisors for determination of such levels pursuant to statute (1 Comp. Laws 1929, § 3837 *et seq.*).

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—JUDGES.

Claim of bias of trial judge is considered on appeal because of gravity of charge although inquiry might properly be foreclosed by holding matter could not be presented for consideration for first time in Supreme Court where ample opportunity was available for raising it below.

5. JUDGES—BIAS—EVIDENCE.

Claim of bias of trial judge in statutory proceeding to determine natural level of two inland lakes, whose reminiscences related to unhealthful conditions apparent at times of low water *held*, unfounded where testimony in accordance with which he established level was undisputed and his certificate of the record on appeal affirmatively disclaimed personal or property interest, prejudice or bias (1 Comp. Laws 1929, § 3837 *et seq.*).

6. COSTS—PUBLIC QUESTION.

No costs are allowed either party on appeal in proceeding to determine natural level of waters of inland lakes, a public question being involved (1 Comp. Laws 1929, § 3837 *et seq.*).

Appeal from Lenawee; Rathbun (George A.), J. Submitted April 9, 1936. (Docket No. 42, Calendar No. 38,738.) Decided September 2, 1936.

The board of supervisors of Lenawee county filed a petition to determine the natural height and level of the waters in Devils and Round Lakes. Village of Addison, a municipal corporation, contested the petition. From decree fixing level of the waters, contestant appeals. Affirmed.

*LaVon B. Kuney*, Prosecuting Attorney, and *Chandler & Culver*, for petitioner.

*John F. Steward* and *James H. Baker*, for contestant.

Toy, J.   The board of supervisors of Lenawee county, in pursuance to Act No. 377, Pub. Acts 1921 (1 Comp. Laws 1929, § 3837) petitioned the circuit court of that county to determine the natural height and level of the waters of Devils Lake and Round Lake, inland lakes located within the borders of the county.

The village of Addison, appellant herein, contested the petition.   After a hearing in which testimony was taken, the court entered its order fixing and determining the natural height and level of the waters of these lakes to be 1,043.333 feet above sea level.

Thereafter we granted appellant our writ of certiorari to review the proceedings in accordance with that portion of the statute here involved which reads:

"Such order shall be final as to the fact, but any interested party claiming to be aggrieved thereby may make application to the Supreme Court of the State of Michigan for a writ of certiorari to review such proceeding (1 Comp. Laws 1929, § 3837)."

Appellant contends that the statute, 1 Comp. Laws 1929, § 3837, does not and cannot confer upon the circuit court the jurisdiction or right to fix and determine the natural water level of the lakes involved.   It contends that the determination of such "natural" level is and must be done by nature itself and cannot be determined by "man."   In line therewith it offered an expert witness, Dr. I. D. Scott of the geological department of the University of Michigan, who testified:

"That it was a physical impossibility for any court or human being to definitely fix and determine the natural height and level of Devils and Round lakes, because of certain laws of nature, to-wit:

precipitation, evaporation and seepage are constantly and forever controlling and changing the natural height and level of those lakes and that the natural height and level of those lakes are changing daily and constantly and that man can do nothing other than artificially regulate or control the height and level of those lakes."

Counsel for appellant cite the definition of the term "natural" as given in Webster's New International dictionary (2d Ed.) to be "in accordance with or determined by nature; characteristic of the physical world." An examination of this citation discloses that, following the above quoted definition, Webster also uses the word "normal" in defining this term. We have heretofore so construed it to mean "normal." *Niles* v. *Meeker,* 219 Mich. 361; *Kennedy* v. *Van Buren County Drain Com'r,* 189 Mich. 676.

The legislature evidently realized that the existence of the very laws of nature which were named by appellant's expert witness, namely: precipitation, evaporation and seepage, at times caused the normal height and level of our inland lakes to fluctuate, especially in years of drought or summers of intense heat, and so to preserve these lakes at a constant and normal level despite such conditions, it enacted the law under consideration.

Certainly, the legislature could not if it would, control such laws of nature as precipitation, evaporation or seepage. But it could make provision against the unseasonable or excessive operation of such natural laws, and so provide that inland lakes might be maintained in their normal state.

The transcript of the testimony taken at the hearing was not returned to this court, but from a statement of facts contained in the record we take it that several witnesses testified to the condition of the

shore line and the level of the lake in years of drought as well as in years of normal and of unusual precipitation. It also appears that the county surveyor, a civil engineer, testified that in order to bring the waters of the lake to its *existing shore line,* the water would have to be maintained at 1,043.333 feet above sea level. None of this testimony was disputed. The court made its finding based thereon, and we find nothing in the record to militate against such determination.

Counsel for appellant contend that the trial judge was biased and was disqualified from hearing and determining the issue and for that reason his order should be set aside.

They base their contention on the statements of the judge when rendering his opinion, wherein he stated:

"Gentlemen, as many of you know, I have lived around Devils Lake and * * * have had to rent. That has resulted in my living * * * so that I have had that practical viewpoint, observed with my own eyes, of living on the south shore, the north and the east shore. * * * And I believe that I know as much about that lake as any of the witnesses who have here testified other than Mr. Branch."

The judge then related how he had observed the lake in dry seasons and again in other years of greater precipitation. He continued:

"And during that season of 1934 I saw dead vegetation and dead fish along that shore line washed up on the sands between the natural shore line and the then existing water line, and that dead vegetation and animal matter gave off odors that were in themselves indicative of an unheathful condition so that these doctors who have testified with reference to the welfare of the public and the conditions surrounding the public health at the lake

during those low water periods have told me nothing, I know it all better than they could tell me, and all from my own observation."

This claim of bias was not raised before the trial judge, but is presented for the first time on appeal.

The opinion of the trial judge was delivered on September 17, 1935, but the order based thereon was not signed and entered until October 14th. Counsel had ample time between those dates to raise the question, had they desired to do so; nor were they barred from urging it, by proper motion after the signing of the order. By properly raising the matter in the court below, an opportunity would have been given the judge to place in the record his findings thereon. While we might with propriety foreclose the matter by holding that the question cannot be presented for the first time in the appellate court, we feel that because a charge of bias against a court, unanswered or undetermined, strikes at the very base of our system of justice, we should here consider the matter.

Let it be remembered that many witnesses were heard. That none of their testimony was in any wise disputed or in conflict. The record before us discloses that the normal shore line of the lakes was open and visible to the eye of any observer. It further discloses that the judge did not base his decision in any way upon his own observations. His opinion stated that:        ·

"As to the natural level of this lake, the only positive testimony that has been given me, other than to fix the level at the shore line, is the testimony of Mr. Walter Frazier, the engineer of this county, who made a very thorough examination of the conditions existing on May 22, 1935, by the use of proper appliances and instruments, together with

an investigation of the elevation above sea level heretofore previously fixed by the government, and gave me the exact measurement of a level which would maintain the lake at its shore line, open and visible to the naked eye of any observer. And furthermore the only testimony of any definite water line level mark was the testimony of Mr. Frazier in which he stated that there was a visible water line, an old water line on the wall of the flume, which was 1,043.81 feet above sea level.

Testimony of Mr. Frazier was to the effect that the water, in order to bring the lake to its existing shore line, would have to be maintained at 1,043.333 feet above sea level in order to bring the level of the lake to the shore line. And that upon the flume that sea level height measures $38\frac{1}{2}$ inches. Gentlemen, I fix that as the natural level of Devils and Round Lakes.''

The point in issue before the trial court was the determination of the natural height and level of the lakes. The reminiscences of the judge related mainly to unhealthful conditions which had been apparent to him, at times of low water.

In addition, the circuit judge in his certificate of the record on appeal, states:

''The court further certifies he has no personal or property interest in the outcome of this case and has no prejudice or bias in any manner whatsoever.''

Realizing the seriousness of the matter charged, we have carefully examined the entire record before us, and based thereon, we find the charge of bias to be ill-founded and without any basis.

We have examined the case of *Valentine* v. *Malone,* 269 Mich. 619 (97 A. L. R. 326), cited by counsel for appellant, and find it clearly distinguishable from the case at bar.

We find no error in the proceedings and therefore affirm the order of the circuit court. This being a public question, no costs will be allowed either party.

North, C. J., and Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred. Potter, J., took no part in this decision.