IN RE ESTABLISHMENT OF WATER LEVELS OF LAKE SEYMOUR.

(91 A2d 813)

May Term, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and CUSHING, JJ.

Opinion Filed October 7, 1952.

368

*Hubert S. Pierce* and *Milton S. Gould* (of New York, N. Y.) for Citizens Utilities Company.

*Clifton G. Parker,* Attorney General, for the State of Vermont.

CUSHING, J. This cause is here on exceptions of Citizens Utilities Company to findings of fact and a certificate of the Public Service Commission establishing the natural minimum and maximum water levels of Lake Seymour.

Section 1 of No. 197 of the Acts of 1951 reads as follows:

> "Section 1. *Public service commission to establish levels.* On or before September 15, 1951, the public service commission shall ascertain and establish the natural maximum and minimum levels of

Lake Seymour at the outlet, excluding from its determination of such levels the effect on natural conditions disturbed by blasting of the barrier, changes in the depth and width of the channel above and below the barrier, as well as the effect the present control dam may have on such levels. When such levels are so established, the commission shall certify its findings to the secretary of state and cause the same to be recorded in the offices of the town clerks of the towns of Morgan and Charleston."

Section 2 provides that the waters of the lake shall not be raised or lowered, artificially, or permitted through neglect to become lower or higher than the levels so established.

Section 3 provides that a person, firm or corporation who violates a provision of this act shall be punished in accordance with the provisions of V. S. 47, § 9406.

The commission heard the matter at Newport on August 21 and 22, 1951 and inspected the lake on August 27. After taking testimony and on "personal observations by this commission of the dam, lake and physical markings" findings of fact and certificate were filed by the commission on September 15, 1951.

The commission finds that Lake Seymour, located principally in the town of Morgan but with its outlet in the town of Charleston, has a normal surface area of approximately 1732 acres; that it is boatable water, and that the water therefrom flows into Echo Lake and from Echo Lake into the Clyde River.

Findings 4 to 13 inclusive read as follows:

4. That a dam with gates was erected at the outlet of Lake Seymour in 1921 by a predecessor company of Citizens Utilities Company; that portions of said dam still remain but have no effect on the present flow of water.

5. That a dam fitted with gates now owned by Citizens Utilities Company was constructed and has been maintained on the outlet stream of Lake Seymour since 1928 and said dam controls the level of said Lake Seymour. Said dam is approximately 1200 feet downstream from the outlet.

6. That at times, up until 1939, Citizens Utilities Company or its predecessors in ownership maintained 12 inch flashboards on the present dam.

7. That Citizens Utilities Company or its predecessors in ownership have since 1921 by means of dams and flashboards raised and lowered the level of Lake Seymour as a means of controlling the stream flow in the Clyde River.

8. That employees of Citizens Utilities Company or its predecessors in ownership in 1923 blasted out the channel from a point below the present dam a distance of some 1200 feet toward the lake.

9. That employees of Citizens Utilities Company or its predecessors in ownership did additional blasting in the channel up to 1948.

10. That prior to the erection of the present dam in 1928, there was stillwater above the Big Rock. The Big Rock is located immediately below the east end of the dam.

11. That said blasting has affected the natural maximum and minimum levels of Lake Seymour by widening and lower (ing) the channel.

12. That the natural maximum water level of Lake Seymour at its outlet, disregarding the effect of the dams and blasting, is 6 inches above the crest of the present dam.

13. That the natural minimum water level of Lake Seymour at its outlet, disregarding the effect of the dams and blasting, is 8 inches below the crest of the present dam.

By the provisions of Section 1 of No. 197 of the Acts of 1951 the duty is placed on the Public Service Commission to "ascertain * * * the natural maximum and minimum water levels of Lake Seymour." What did the Legislature mean by using the term "natural"?

In discussing the meaning of this word "natural" the Supreme Court of Michigan in *In re Petition of Lenawee County,* 276 Mich 591, 594, 268 NW 750, 751, says:

"Counsel for appellant cite the definition of the term natural as given in Webster's New International Dictionary (2d Ed.) to be 'in accordance with or determined by nature; characteristic of the physical world.' An examination of the citation discloses that following the above quoted definition Webster also uses the word 'normal' in defining this term. We have heretofore so construed it to mean 'normal.'"

In *Kennedy* v. *Van Buren Drain. Commr.*, 189 Mich 676, 679, 155 NW 733, 734, the court holds that the phrase "natural water level" means "normal water level."

In *Dorman* v. *Ames and George,* 12 Minn 451, 464, the Court says:

"The natural state of the stream is that in which the stream is under the ordinary operation of the physical laws which affect it; this may be different at different seasons of the year, and yet be ordinary by the recurrence of the same condition about the same season of the year; it may ordinarily, be high a portion of the season, and low at another portion and at another at a medium stage, yet as these are ordinary by reason of their annual or frequent occurrence, so that a variance therefrom is an exception, they are the natural condition of the stream."

In 56 Am Jur 512, § 19, the rule is laid down that the natural state of a stream is the condition of the stream under the physical laws which affect it. This may be different at different seasons of the year and yet be ordinary by the recurrence of the same condition about the same season of the year.

In *McBurney* v. *Young,* 67 Vt 574, 579, 32 A 492, 493, 29 LRA 539, this Court says: "We think that upon reason and authority, low water mark as a terminus boundary, must be held to mean ordinary low water mark."

In view of the foregoing we hold that the term "natural" means "normal" and that it was the duty of the commission to find what are the normal maximum and minimum levels of Lake Seymour.

Citizens excepted to findings, 7, 8, 9, 10, 11 and 13. As the exceptions to findings 7, 8, 9 and 10 are not briefed, these excep-

tions are waived. *O'Connor* v. *Vermont Transit Co. Inc.,* 116 Vt 6, 8, 68 A2d 699; *Little* v. *Loud,* 112 Vt 299, 301, 23 A2d 628.

Citizens briefs its exceptions to findings 11 and 13. Finding 11 reads as follows:

> "That said blasting has affected the natural maximum and minimum levels of Lake Seymour by widening and lower (ing) the channel."

The grounds of the exception are that the commission has failed to find to what extent such blasting has affected said water levels and that the finding as made is incompetent and inconclusive as a finding upon which a determination of the natural maximum and minimum level of said lake can be made.

In its brief Citizens states "that there was blasting in the channel is not disputed and that such blasting may have affected the width and depth of the channel is likewise not disputed."

The commission finds in its 10th finding that prior to the erection of the present dam in 1928, there was stillwater above the Big Rock. Obviously, the then existing condition of the channel acted as a barrier to the flow of water from Lake Seymour. The reason for the removal of this barrier was to increase the flow of water from the lake and to permit it to get to the dam faster and these results were accomplished by the clearing of the channel.

It is obvious that when obstructions are removed from a stream which drains any body of water the draw down will be accelerated and increased resulting in a lowering of both maximum and minimum levels. There is ample evidence to sustain the commission's finding. It was not incumbent on the commission to report the extent of this draw down in its determination of the natural levels as these levels existed prior to such changes. The exception is not sustained.

Finding 13 reads as follows: "That the natural minimum level of Lake Seymour at its outlet, disregarding the effect of the dams and blasting is 8 inches below the crest of the present dam."

The grounds of this exception are that it is contrary to the evidence and to the weight of the evidence, has disregarded the natural barrier at the outlet of the lake which controls the minimum depth to which said lake can be lowered and that the finding is based wholly on inconclusive memories of witnesses who had no occasion to determine low water mark of said lake or any occasion to effectively

recall what was in fact the minimum low water mark of said lake prior to 1921 when the first dam was installed.

A study of the evidence discloses that the commission could find that at the time of the hearing the level of Lake Seymour was at its normal elevation for the season of the year; that this level was approximately one-half of an inch over the crest of the present dam; that there was a variation of approximately 14 inches from high water to low water.

Finding 12, to which no exception is taken, finds that the maximum water level of the lake is 6 inches above the crest of the present dam.

Ray Vinton who had summered at the lake since 1924 and who had known the lake for 55 years testified that there was a 14 inch fluctuation in the level of the lake.

Erastus L. Dutton, who had resided near the lake for 65 years and who had observed its rise and fall, testified that the level would fall 6 to 7 inches below its present level.

Ora Cargill, who had lived in Morgan 74 years and who was engaged in lumbering operations around the lake, including the floating of logs down the stream, testified that the lake would drop 6 or 7 inches from the level at the time of the hearing "in dry weather."

The credibility of witnesses and the weight of their testimony is for the trier to determine. *Hayden* v. *Lavallee,* 116 Vt 340, 341, 75 A2d 690, and cases cited. The ultimate fact in issue having been found error does not appear in the failure of the commission to state the effect given subordinate facts or to report evidence. *Village of St. Johnsbury* v. *Cenedalla,* 109 Vt 174, 182, 194 A 382; *Taylor* v. *Henderson and Smith,* 112 Vt 107, 116, 22 A2d 318. Conflicts in the evidence must be resolved against the appellant on review. *Sparrow* v. *Cimonetti,* 115 Vt 292, 297, 58 A2d 875.

A simple arithmetical computation based upon Finding No. 12 not excepted to and the foregoing testimony places the low water level at from 6½ inches to 8 inches below the crest of the present dam. In setting it at 8 inches the commission gave Citizens the benefit of the utmost fluctuation and fall from the maximum to the minimum level.

Citizens further ground of exception is that the commission has disregarded the natural barrier at the outlet of the lake which controls the minimum level to which said lake can be lowered.

The evidence shows that at the outlet of the lake and above the

old dam are two areas, one 7 feet, the other 60 to 65 feet from the fish screen back in the lake, where the sandy bottom is 41 inches below the spillway; that these areas would bar any run off from the lake. Its claim is that these barriers determine the low water level of the lake.

There is no evidence that the water of the lake has ever reached these barriers. We have held, supra, that the legislature directed the commission to determine the normal minimum water level. Stephen W. Keith, an engineer in the employ of Citizens, testified that these barriers did not determine the normal minimum water level of the lake. The exception is not sustained.

Citizens in its brief claims that the findings of fact are wholly and completely inadequate to support the order and as such, the order deprives the company of due process of law.

No exception is pointed out to us that warrants our consideration of this claim. It might be noted that Citizens claim that the commission fails to disclose the "method employed" in arriving at its conclusion. For aught that appears the necessity of disclosing the "method employed" applies only to rate cases. Consequently such cases and the others cited by Citizens are not in point.

In this case the commission found that the levels of the lake have been affected by the blasting of the channel and has found the ultimate facts, namely, the maximum and minimum water levels as defined by the act.

The commission's certificate reads as follows:

> "We Hereby Certify that the natural maximum water level of Lake Seymour at the outlet is six inches higher than the crest of the present Citizens Utilities Company dam, which dam is located about 1200 feet below the lake outlet."

> "We Hereby Certify that the natural minimum water level of Lake Seymour at the outlet is eight inches below the crest of the present Citizens Utilities Company dam, which dam is located about 1200 feet below the lake outlet."

Citizens excepts to the certificate on the grounds, (I) that it is contrary to the evidence; (II) that it is contrary to the weight of the evidence; (III) that No. 197 of the Acts of 1951 "is contrary to the Constitution of the State of Vermont, and of the United States of

America"; (IV) that it is confiscatory as to the property rights of Citizens and therefore unconstitutional; (V) that the Act deprives Citizens of any right to appeal and to have the determination of the commission passed upon by the appropriate courts; and (VI) that it is contrary to law.

■ The first part of the commission's certificate relating to the maximum water level follows the exact language of finding No. 12. As this finding was not excepted to the first and second grounds of the exception to the certificate are not available here. *Little* v. *Loud, supra; Holton Estate* v. *Ellis,* 114 Vt 471, 490, 49 A2d 210. The last part of the certificate relating to the minimum water level follows the exact language of Finding No. 13. What we have said about the exception to that finding disposes of grounds one and two of the exception to that part of the certificate. These grounds are of no avail.

■ The third ground of Citizens' exceptions raises the question of the constitutionality of No. 197 of the Acts of 1951, in accordance with which the commission has operated. No ground is advanced nor argued to support this contention. Lake Seymour being public waters the enactment of No. 197 was an exercise of the police power of the state to preserve a common property or to prevent its diminution or destruction. *State* v. *Theriault,* 70 Vt 617, 623, 41 A 1030, 43 LRA 290.

■■ Citizens claims as a fourth ground that the act is unconstitutional because it is confiscatory of the property rights of Citizens. The only title acquired by Citizens was to the dam site some 1200 feet down stream from the outlet of Lake Seymour. It does not claim title to the lands covered by the water nor any riparian rights by grants from private persons. The commission has found that Lake Seymour is "boatable water"—they are public waters within the meaning of section 63 of the Vermont Constitution. Consequently the bed or soil of the lake is held by the people of the State in their sovereign capacity in trust for the public uses for which it is adapted and the State is required to preserve the water for the common use of all. No right can be acquired by or granted to private persons to control the height of the water of the lake or the outflow therefrom by artificial means for private purposes. *Hazen* v. *Perkins,* 92 Vt 414, 419, 105 A 249, 23 ALR 748; *State* v. *Malmquist,* 114 Vt 96, 101, 40 A2d 534. No prescriptive right to the use of the waters of the lake could be acquired by Citizens. *Trustees of*

*Caledonia County Grammar School* v. *Howard,* 84 Vt 1, 77 A 877; *Hazen* v. *Perkins, supra.* Hence, there has not been any confiscation of the rights of Citizens. These exceptions are not sustained.

The fifth ground of exception is that Citizens is deprived of any right to appeal and to have the determination of the commission passed upon by the appropriate courts. V. S. 47, § 9296 provides:

> "A party to a cause who feels himself aggrieved by the final order, judgment or decree of the commission may transfer such cause to the supreme court, as provided in § 2128, for the correction of any errors excepted to in the proceedings of the commission, or in the form, or substance of its orders, judgments and decrees, on facts found and reported by it. * * *"

In *Bacon* v. *Boston & Maine Railroad,* 83 Vt 528, 533, 77 A 858, 860, this Court says: "The Public Service Commission is by law required to state all of its rulings that are excepted to and its findings of facts, and a case determined by the commission comes to this Court for the correction of any error so shown or of any error appearing from the facts found and reported by the commission."

In *Sabre* v. *Rutland R. R. Co.,* 86 Vt, 347, at page 368, 85 A 693, 702, this Court comments on the right of appeal from the orders of the Public Service Commission and holds, on page 369, "The powers given to this Court on appeal * * * are sufficient to secure to every party interested * * * a vindication of his full rights * * *." This exception is without avail.

Citizens last ground is that the order is contrary to law. This exception is too general to merit consideration. It is without avail.

*Certificate affirmed. To be certified to the Public Service Commission.*