## In re Proceedings Concerning a Neglected Child

[276 A.2d 14]

No. 13-70

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed March 5, 1971

*James M. Jeffords,* Attorney General, and *William S. Roby, III,* Assistant Attorney General, for the State.

*Harvey D. Carter, Jr.,* Bennington, for the Juvenile.

*Keith E. King,* Bennington, for the Parents.

Shangraw, J. The state's attorney of Bennington County brought this petition to the District Court of Vermont, Unit No. 1, Bennington Circuit, sitting as a Juvenile Court. The petition alleges that the subject of these proceedings is a neglected child in that she "is without proper parental care or control, or subsistence, education, medical or other care or control necessary for her wellbeing."

Following a hearing on the merits of the petition, the court filed its Findings and Order dated January 9, 1970, setting forth therein the following:

"1. ........................ the child named in said Petition is an individual of the age of one, the date of birth of said child being October 1, 1968.

2. That on the date on which the Petition was filed, the child was domiciled in Bennington in the County of Bennington, and by reason of foregoing 1 and 2, the Court has jurisdiction over this matter.

3. That the subject child is without proper parental care or control, or subsistence, education, medical or other care or control necessary for her wellbeing.

4. That said child is a neglected child."

A hearing was held on the disposition of the child, previously found to be neglected, and on January 12, 1970, the court issued an Order of Disposition transferring legal custody of the child to the Commissioner of Social Welfare for the State of Vermont pursuant to the provisions of 33 V.S.A. § 656.

On January 19, 1970, the parents of the child filed a motion to set aside the Order of Disposition which was denied by the Court. The parents have appealed to this Court from the disposition order, from the denial of the motion to set aside such order, and from all orders of the court made subsequent to the hearings.

Appellants have briefed three assignments of error, namely; (1) failure of the court to find facts upon which a judgment of neglect could be based; (2) that the evidence is insufficient as a matter of law to support a determination of neglect; and (3) the use of the social welfare report at the disposition hearing was improper, unconstitutional, and a violation of due process of law.

Appellants contend that the "findings" of the court, hereinbefore quoted in this opinion, do not meet the requirements of 12 V.S.A. § 2385, and that the order itself has no legal basis. This section reads:

> "2385. Findings of Fact. All facts found by any tribunal in actions or proceedings tried without a jury upon which an appealable judgment, order, decree or determination is rendered, shall be reduced to writing, unless waived by all parties, and shall be signed by a majority of the members of the court or the presiding officer. . . . Findings of fact shall stand if there is any evidence fairly and reasonably tending to support them."

In juvenile proceedings findings of fact are controlled by 33 V.S.A. § 654 which reads:

> "§ 654. Hearing; findings; dismissal.
>
> (a) After hearing the evidence on the petition the court shall make an order containing its findings thereon. If the court finds that the allegations made in the petition have not been established, it shall dismiss the petition and order the child discharged from any detention or shelter care theretofore ordered in the proceedings. If the court finds that the allegations made in the petition have been established, it shall find either that the child is delinquent, or neglected, or unmanageable.
>
> (b) After making such findings of delinquency, neglect or unmanageability, the court shall then fix a date, hour and place for a continuation of the hearing, for the purpose of then considering the disposition to be made in the proceedings. In the case of a finding of neglect or unmanageability the continuance of the hearing may be held immediately upon that finding. In the case of a finding of delinquency, such continuation of hearing shall not be held less than fifteen nor more than thirty days after the filing of the order containing such finding.—1967, No. 304 (Adj. Sess.), § 24, eff. July 1, 1968."

In this case the juvenile court followed precisely the provisions of the juvenile court act.

Appellants claim that findings 3 and 4 cannot be construed as facts but are conclusions and more specifically conclusions of

law. The juvenile court found the ultimate fact to be "That said child is a neglected child." In the presence of such findings, we have held on numerous occasions that if the record supports the ultimate finding, we will affirm. *Cass-Warner* v. *Brickman*, 126 Vt. 329, 333, 229 A.2d 309 (1967) ; *Potwin* v. *Tucker*, 126 Vt. 414, 418, 234 A.2d 430 (1967) ; *In re Lake Seymour*, 117 Vt. 367, 373, 91 A.2d 813 (1952). It is the better practice to report all the facts upon which an ultimate finding is based. *Montpelier* v. *Calais*, 114 Vt. 5, 8, 39 A.2d 350 (1944). The findings also meet the requirements of 12 V.S.A. § 2385 as indicated in the above cited cases.

In the absence of more detailed findings, we have carefully reviewed the transcript and record in this case. Following is a brief summary of the evidence introduced by the State during the hearing on the merits of the petition seeking an adjudication that the child is neglected.

Phyllis Smith, a next door neighbor of the child's parents, testified that she had cared for the child on two occasions during the summer of 1969. On each occasion she observed black and blue marks on the child's arm, stomach and face. Mrs. Smith stated that she was told by the mother that her husband hit the child when she was crying. Mrs. Smith also testified she was told by the child's mother that she did not want to make trouble for her husband and "didn't care" if something happened to the child. On cross-examination this witness further stated that she had discussed the child's condition with her mother on a number of occasions.

William Worthington, M.D. Pediatrics, testified that on August 1, 1969, he was called to the emergency room of the local hospital in Bennington, Vermont, to treat the child for respiratory distress brought about by an injury to her throat during feeding. The doctor testified that he was informed by one of the parents that the child immediately vomited a large quantity of milk and tried to cry. The doctor observed breathing difficulties and marked facial discoloration of the child. This condition was allowed to persist until 4.00 P.M., when the child was admitted for emergency care. The doctor testified that the father told him that he "may have" pushed the bottle into the baby's mouth.

Dr. Worthington testified that when he first examined the child he noted "old blood on parts of the body" and signs of an

old fracture on the left sixth rib. The doctor further testified that the child had been treated for an intracranial hemorrhage in the local hospital the previous February and was subsequently treated in Albany, New York, with subdural decompression procedures. As of the date of the hearing on the merits of the petition, the child was again a patient in the hospital for reasons unknown.

At the conclusion of this presentation the State rested its case. Counsel for the parents challenged the sufficiency of the evidence to sustain the petition, but offered no evidence on the issue of neglect. The court held that the allegations of the petition had been established. Thereupon it made a specific finding that the subject juvenile "is a neglected child" within the meaning of the statute in that she is without proper parental care or control or medical care or control necessary for her well-being.

██ The record establishes that at the time under investigation the subject juvenile was a baby of ten months. The evidence is undisputed that the bruises on the baby's body were caused by her father's hitting her. And the inference is plain and unrebutted that the injury to the child's throat, which brought her to the emergency facilities at the hospital, was the result of improper feeding, administered by her father. A child thus victimized is without proper parental care and is "neglected" within the meaning of the statute.

Following the hearing on the merits of the State's petition and the court's adjudicatory order of January 9, 1970, a disposition hearing followed and on January 12, 1970, the legal custody of the child was ordered transferred to the Commissioner of Social Welfare for the State of Vermont. Appellant's motion to set aside the court's Order of Disposition was heard on February 2, 1970, and denied February 10, 1970.

At the 1967 adjourned session of the Vermont Legislature the statutes were rewritten pertaining to the procedures to be followed by the juvenile courts. 33 V.S.A., Chapter 12. The new procedures replaced the old single hearing and now requires separate hearing on the merits and on disposition. 33 V.S.A. §§ 654, 655. Under 33 V.S.A. § 655, *supra*, reports by the Commissioner of Social Welfare in cases of neglect and unmanageability, and the Commissioner of Corrections in cases

of delinquency, are made available to the Court, and, upon request, to the parties for use in a disposition hearing.

Section 655 (c) continues by stating that:

"in order to determine the disposition to be made, all information helpful in determining the questions presented, including oral and written reports and including the disposition report submitted under this section, may be admitted and may be relied upon to the extent of its probative value, even though not competent in the initial hearing on the petition."

Neither report may be used as evidence prior to a finding of delinquency, unmanageability or neglect, 33 V.S.A. § 655, *supra*. In the court's entry order of February 10, 1970, the juvenile court followed this mandate and recited therein "The Disposition Report filed by the Department of Social Welfare was not referred to by the Court prior to or during the adjudicatory hearing and same was read by the Court only after finding of neglect was made pursuant to 33 V.S.A. § 655".

At the disposition hearing which was held following the adjudication by the court that the child was neglected, Mrs. Hollace Bowen, a social worker representing the Department of Social Welfare testified that she had investigated the matter then before the court and that her investigation included a review of the records of the North Adams Hospital. It also included conversations with the parents, Dr. E. J. Coughlin, Dr. Richard Fabricius, Miss Cunningham, head nurse, pediatrics, personnel at the Albany Medical Center, Fred Wright, Constable, Town of Woodford, Peter Mally, Ernest Mincy, Abraham Moskovitz, and with Dr. William Worthington and Mrs. Phyllis Smith who both testified at the hearing on the merits of the petition.

The report also reveals that Mrs. Bowen was notified by the hospital that the child screamed when her father came near her. It also appears in the report that several of the child's neighbors had been concerned about the situation in the home but had not witnessed anything.

The parents were called at the dispositional hearing and each testified, in substance, that the child was well cared for in their home. The father stated on direct examination that he

spanked the child because ". . . she is a difficult feeder. This is the trouble, being a high strung child." During a brief cross-examination opened for the purpose of inquiring into the father's personal stability, he defined his problems as including "everything."

. ■ Mrs. Bowen filed her report January 5, 1970, and recommended that the legal custody of the child be transferred to the Commissioner of Social Welfare.

The appellants urged below, and on appeal claim, that the use of the report of the social welfare worker, Mrs. Hollace Bowen, and its consideration by the juvenile court at the dispositional hearing was improper, unconstitutional, and in violation of due process of law.

, In support of the above contentions, appellants call attention to the case of *In Re Rich*, 125 Vt. 373, 216 A.2d 266 (1966), and that of *In Re Lee*, 126 Vt. 156, 224 A.2d 917 (1966). In *Rich, supra*, a minor was initially charged with contributing to the delinquency of a minor and committed to Weeks School for the remainder of his minority. In the *Lee* case, *supra*, the dependency of two minors was alleged. Each child was committed to the care, custody and control of the Department of Social Welfare.

¨ In each of the foregoing cases an investigation was made by a representative of the Department of Social Welfare and reported to the juvenile court prior to the hearing on the merits of the petition and considered as evidence at that time. In each case this Court took the view that such reports had no force as evidence at the trial on the issues presented.

. The revised procedures, 33 V.S.A. §§ 654, 655, meet the objections in the *Rich* and *Lee* cases, which now allows the trial court the means of obtaining expert assistance in making the discretionary determination of what-to-do now at the disposition hearing. This is consistent with the widespread practice of soliciting reports from corrections officers in criminal cases following convictions and before sentence.

■ Statutes are ˙ presumed to be constitutional. *LaFlamme* v. *Milne*, 127 Vt. 301, 303, 248 A.2d 692 (1968). When considering the constitutionality of an act of the Legislature every presumption is to be made in favor of its

constitutionality, and it will not be declared unconstitutional without clear and irrefragable evidence that it infringes the paramount law. *Dempsey* v. *Hollis,* 116 Vt. 316, 318, 75 A.2d 662 (1950). We find no basis to support appellants' contention that there has been a deprivation of due process of law in this case. *In Re Delinquency Proceedings Concerning a Certain Juvenile,* 129 Vt. 185, 274 A.2d 506 (1970).

The action of the Juvenile Court is without error.

*Judgment orders affirmed.*