### Rachel Largess v. William Tatem

[291 A.2d 398]

No. 27-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed May 8, 1972

*Harry Goldman*, Brattleboro, for Plaintiff.

*Wilson, Curtis, Bryan, Quinn & Jenkins*, Burlington, for Defendant.

**Daley, J.** This is a civil action sounding in negligence. Plaintiff originally sought damages against Dr. William Tatem, Dr. Chard and the Rockingham Memorial Hospital Association for alleged negligent treatment of a hip fracture sustained by her, and against Zimmer Company for alleged defects in a so-called "Jewett nail". This is a hip fixation device manufactured by Zimmer Company and was used in the fixation of the fracture in question.

The action was tried by court without jury. During the course of the trial, the defendants, Chard, Rockingham Hospital and Zimmer Company negotiated a settlement with the plaintiff, and in the action as to these defendants the following entry was made—"Discontinued with Prejudice." The trial continued upon plaintiff's claim of negligence against Dr. William Tatem only. Defendant Tatem answered plaintiff's complaint by plea of general denial. Findings of fact were made by the court which resulted in judgment being entered for the plaintiff. From this judgment, defendant Dr. Tatem appeals to this Court claiming that the judgment is not supported by the findings of fact and certain findings are not supported by the evidence.

The findings of fact to which the defendant has no objection relevant to the issues raised by appeal may be summarized as follows: The plaintiff, a 77 year old woman, weighing 85 pounds, fell in her kitchen, in Bellows Falls, Vermont, and fractured her left hip on or about November 14, 1966. The defendant, a doctor of medicine, engaged in the general practice of medicine in Walpole, New Hampshire, and the general vicinity of Bellows Falls, Vermont, was called and caused her to be admitted to the Rockingham Memorial Hospital for treatment. X rays were taken, and the injury was diagnosed as a comminuted intertrochanteric fracture of the left hip. Dr. Tatem concluded that the reduction of such fracture was beyond his training and experience, and called Dr. William Chard into the case. Dr. Chard is an acknowledged specialist in orthopedic surgery with unquestioned qualifications in the field and extensive experience in intertrochanteric hip fractures. Dr. Chard recommended open reduction and internal fixation of the fracture fragments by an internal fixation device known as the "Jewett nail". With Dr. Tatem's concurrence and with Dr. Tatem assisting, Dr. Chard performed this procedure on November 15, 1966. The installation of the "Jewett nail" and the operating procedures connected therewith were skillfully and successfully performed with good result.

The plaintiff's only claim of liability on the part of Dr. Tatem lies in the post-operative care and treatment following the successful surgical procedures above set forth.

The fixation device, the "Jewett nail", was not designed to permit full early weight bearing nor was it so recommended; it was in fact packaged with a printed admonition to the effect that "no implant can be expected to withstand the unsupported stresses of full weight bearing" (Finding 7). Dr. Chard was generally familiar with this admonition, but Dr. Tatem was not (Finding 7). This admonition (contained in plaintiff's Exhibit #22) was also accompanied by a printed instruction as follows:

"4. POST OPERATIVE CARE IS IMPORTANT. The patient should be instructed in the limitations of his metallic implant and should be cautioned regarding weight bearing and body stresses on the appliance prior to secure bone healing."

· The court found that Dr. Chard was familiar with the limitations as to weight bearing. There is no evidence that such knowledge was within Dr. Tatem's field of general practice.

Dr. Chard for some time following the operation directed the course of plaintiff's treatment. All post-operative orders were written on the doctor's order sheet on the plaintiff's hospital chart. On November 22, Dr. Chard wrote the following order on the doctor's order sheet: "To P.T. [Physical Therapy] for ambulation with no wt. [weight] bearing. J. Chard."

On November 23, Dr. Chard entered the following on the plaintiff's progress notes: "23 Nov. Doing well. Will give P.T. a chance to ambulate her on non-wt. bearing . . . . J. Chard." He later made an entry on the progress notes on November 28: "Doing fairly well with walker . . . . J. Chard."

The last entry made by Dr. Chard on the plaintiff's progress notes was as follows: "1 Dec. Ambulating very well. Check X rays look good. Wound healing well—not red or tender. Cause of temp. on 27 and 30 Nov. is not clear. May go home if Dr. Tatem feels general condition permits. J. Chard."

After the above entry, Dr. Chard took no further action in plaintiff's behalf except to call upon her once while visiting another patient. Plaintiff remained in the hospital until December 23, 1966, when she was discharged by Dr. Tatem. At the time of her discharge, she walked out of the hospital unassisted by any person or weight supporting device. On January 18, 1967, plaintiff was readmitted to the hospital. X rays revealed that the "Jewett nail" had fractured along with the bone at the fracture site, necessitating a second operation to remove the broken appliance and insert a new one.

In Finding 18, the court found:

> ". . . [T]he failure would not have occurred without the prolonged and frequent course of full weight bearing to which it was subjected by the plaintiff, so that the failure of the device was proximately caused by the negligence of the defendant Tatem as found in Findings 15, *supra*. The second fracture of the hip was also so caused."

The proximate cause of plaintiff's injury having been found to be as above stated, we now turn to the question of whether or not such cause was due to negligence. on the part of the

defendant. The specific finding of negligence objected to by the defendant is contained in Finding 15:

> "Dr. Tatem knew of the instructions given by Dr. Chard. He was aware that they had not been revised or countermanded. He made no attempt to advise or consult with Dr. Chard as to the advisability of the full weight bearing which he knew was occurring. In light of his admitted unfamiliarity with the type of fixation device here employed, and his admitted reliance upon Dr. Chard as an expert in the field, we find that permitting such weight bearing without Dr. Chard's advice or consent, and his failure to so consult with Dr. Chard, was negligence on his part."

■■ A finding of negligence will stand only if the person who is held responsible for an injury from an act or omission on his part had knowledge or reasonably was chargeable with the knowledge that his act or omission involved danger to another. *LaFaso* v. *LaFaso,* 126 Vt. 90, 93, 223 A.2d 814 (1966). The opportunity for this knowledge of danger, when available by the exercise of reasonable care, is equivalent of knowledge itself, and when such knowledge of danger is required for careful conduct, voluntary ignorance affords no protection from legal liability. *Lane Construction Corp.* v. *State,* 128 Vt. 421, 428, 265 A.2d 441 (1970).

At the time the plaintiff was recuperating in the hospital following the initial hip fracture, the defendant's knowledge concerning the treatment of fractures, in particular the one sustained by the plaintiff, was of a general nature as was his knowledge concerning the healing of fractured bones and due limitations on weight bearing during healing. His experience was limited to non-complicated fractures in which the healing period for a bone such as the femur is from two to three months, during which period it is very essential to avoid motion. The bone must be kept quiet to obtain proper healing and X rays are usually taken to check the healing prior to the allowance of weight bearing. The defendant admitted that the bone in question had not healed with full bony union at the time he discharged the plaintiff from the hospital, thirty-eight days after her admission.

The treatment of intertrochanteric fractures was not within his field of expertise; he had never attempted to personally handle such type of fracture.

He knew by his assistance in the surgical process that the "Jewett nail" had been inserted, a device with which he was not professionally familiar; the defendant admitted that at the time he had not had any occasion or opportunity for specialized knowledge as to the limitation of such device or other internal fixation devices. He merely assumed, without inquiry, the strength and effect of an implanted device, the limitations of which were unknown to him.

At the time the defendant made such assumption, the plaintiff was in his general charge and supervision. The defendant, based upon the entry made by Dr. Chard on December 1, 1966, inferred that Dr. Chard was withdrawing from the case, was no longer going to write any orders or give any instructions, and the defendant was to use his own judgment from then on. In spite of his lack of training in the field of orthopedic practice, his lack of knowledge of the implanted device, the lack of any order or instruction permitting weight bearing, the defendant nevertheless by his own admission condoned full weight bearing without consulting or attempting to consult Dr. Chard, the expert upon whom he relied; the defendant alone made judgment that it was safe for the plaintiff to bear weight which resulted in injury to the plaintiff.

The defendant and the plaintiff occupied the status of physician and patient; the defendant was under a duty of at least employing due ordinary care for the safety of his patient; reasonable care. This Court has, in *dictum*, stated in cases such as the one before us that only an error in judgment so gross as to be inconsistent with due care will support recovery. *Wilkins, Admr.* v. *Brock and Rosselle*, 81 Vt. 332, 345, 70 A. 572 (1908). This principle was reaffirmed in *Domina* v. *Pratt*, 111 Vt. 166, 170, 13 A.2d 198 (1940). Actions inconsistent with due care are within the ambit of negligence; an error in judgment inconsistent with due care under the circumstances then and there existing is condemnable as negligence if injurious consequences follow. Gross error in judgment as referred to in *Wilkins, Admr.* v. *Brock and Rosselle, supra,* is but another way of defining negligence.

■ In our view, the following definition expresses the duties and obligations of the defendant under the circumstances attending his post-operative supervision and treatment:

"[One] may . . . be engaged in an activity or stand in relationship to others which imposes upon him an obligation to investigate and find out so that he becomes liable not so much for being ignorant as for remaining ignorant; and this obligation may require him to know at least enough to conduct an intelligent inquiry as to what he does not know." W. Prosser, Torts § 32, at 160 (4th ed. 1971).

In the light of the defendant's admitted unfamiliarity with fixation devices, the hospital order which he had read relative to weight bearing, an obligation to investigate arose and became part of his duty when he took over plaintiff's care and supervision. Such duty under the circumstances found by the court preceded the making of any judgment concerning weight bearing on the part of the plaintiff. The defendant Tatem's admitted reliance upon Dr. Chard as an expert in a field (intertrochanteric fractures) in which the defendant possessed little, if any, training and experience imposed upon the defendant the duty of consultation prior to allowing full weight bearing upon plaintiff's injured limb, which as the court found, she did with the defendant's full knowledge and consent and with no instructions to the contrary from him.

The actions of the defendant when viewed in the light of his failure to inquire resulting in judgments formed by him are inconsistent with due care, and as the trial court found, constitute negligence.

■ The defendant maintains that Vermont law requires that the care that is to be exercised by a physician in the treatment of a patient must be established by expert medical testimony and cites several cases supporting this rule of law. This Court finds no argument with that premise. However, for every rule of law, there must be a rational reason. It is obvious that the trier of fact must have sufficient technical and scientific testimony at his disposal provided by expert wit-

nesses to answer a technical and scientific question of fact. But when a physician's lack of care has been such as to require only common knowledge and experience to understand and judge it, expert medical testimony is not required to establish that care. See *Thomas* v. *Corso*, 288 A.2d 379, 387–88 (Ct.App.Md. 1972); Annot., 81 A.L.R.2d 591, 608–17 (1962).

Under the circumstances of this case, the evidence presented to the trier of fact clearly indicated the failure of the defendant to inquire prior to making a judgment concerning the weight bearing of the plaintiff was a gross violation of the due care owed by a physician to a patient. This violation of that due care being so apparent to be comprehensible to the lay trier of fact, expert medical testimony is not needed to substantiate the violation which is already apparent.

The defendant contends that there was no evidence to support the court's finding that the plaintiff was free from contributory negligence and did not assume the risk because she did not receive instructions not to bear weight.

The defendant in his answer did not set up the defenses of contributory negligence and assumption of risk, but the court expressly found upon both issues and both parties briefed these aspects of the case. Being affirmative defenses, the burden of establishing conduct on the part of the plaintiff requiring a favorable finding upon either or both defenses is upon the defendant. 12 V.S.A. § 1024; *Garafano* v. *Neshobe Beach Club, Inc.*, 126 Vt. 566, 572–73, 238 A.2d 70 (1967).

The finding of the court in part reads:

> "We find that, in the absence of contrary instructions, she was not guilty of contributory negligence and in no way can it be said to have assumed the risk attendant upon such course of conduct."

That conduct was the plaintiff's walking about after her discharge from the hospital, performing household duties with full weight bearing on the injured member.

The evidence shows that Dr. Chard never gave the plaintiff any instructions concerning limitations on weight bearing as to her activities after discharge from the hospital. Neither did the defendant, while plaintiff was in the hospital and upon her

discharge, give any instructions in spite of the fact that he knew full weight bearing was occurring.

The defendant seeks to fault the plaintiff not for violating post-operative advice but for following a course of conduct which he permitted and even encouraged during her hospital stay. To label her actions negligence would ignore the doctor-patient relationship and place a higher standard of expertise upon the patient than that exercised by the doctor. It seems unrealistic to claim that this plaintiff while in the hands of her doctor is permitted to walk unassisted by any supportive device, but when she does so at home such actions become negligence. The trial court found no evidence of contributory negligence on the part of the plaintiff and neither do we.

The doctrine of assumption of the risk of injury is well set forth in *Killary* v. *Chamber of Commerce*, 123 Vt. 256, 262–66, 186 A.2d 170 (1962), and cases cited therein. Such defense in the case here is totally unsupported by the evidence.

The prescribed law of this jurisdiction is that findings must stand if there is any credible evidence which fairly and reasonably supports them, and this Court must construe them so as to support the judgment, if possible. *Nat'l Grange Mutual* v. *Churchill*, 126 Vt. 428, 432, 234 A.2d 334 (1967). The findings read as a whole are supported by the evidence; the ultimate finding of negligence is supported by the evidence and the findings of fact by the court. Hence, the judgment below is correct in law. See *In re Proceedings Neglected Child*, 129 Vt. 234, 237, 276 A.2d 14 (1971); *In re Lake Seymour*, 117 Vt. 367, 373, 91 A.2d 813 (1952).

*Judgment affirmed.*