IN THE MATTER OF VAN ETTAN LAKE

IOSCO COUNTY DRAIN COMMISSIONER v VAN ETTAN LAKE
ASSOCIATION

Docket No. 79361. Submitted October 2, 1985, at Lansing.—Decided
March 3, 1986.

The Iosco County Drain Commissioner filed a petition under the
Inland Lake Level Act of 1961 in Iosco Circuit Court seeking to
determine the normal height and water level of Van Ettan
Lake and create a special assessment district to finance the
maintenance of the Van Ettan Lake dam. After several hear-
ings, the Iosco Circuit Court, J. Richard Ernst, J., issued an
opinion establishing specific normal, seasonal and maximum
lake levels and creating a special assessment district as pro-
posed by the petitioner, but excluding from the district certain
parcels which the court concluded would not benefit from the
lake dam. Respondent, Van Ettan Lake Association, is com-
prised of individual property owners whose interests were
affected by the creation of the special assessment district. On
appeal, respondent argued that: (1) the circuit court lacked
jurisdiction; (2) even if the circuit court has jurisdiction, the
circuit court erred by failing to conduct a full trial with
opportunity for cross-examination and application of the rules
of evidence; (3) the evidence did not sufficiently establish that
property included in the special assessment district specially
benefits from proximity to the lake; and (4) the special assess-
ment district is underrepresented by the circuit court's exclu-
sion of various parcels. *Held:*

   1. The Inland Lake Level Act of 1961 authorizes the creation
of a special assessment district, so long as the creation of the
district is preceded by a determination of the normal lake level.
Special assessment districts are authorized even where the lake
level is identical to that determined prior to the effective date
of the 1961 act and where the structure to be maintained

REFERENCES

Am Jur 2d, Taxpayers' Actions §§ 8, 15, 44.

Standing of one taxpayer to complain of underassessment or nonas-
sessment of property of another for state and local taxation. 9
ALR4th 428.

existed before the 1961 act's effective date. Therefore, the circuit court properly had jurisdiction to set the lake levels to levels determined at court proceedings prior to 1961 under a previous lake level act and to create the special assessment district.

2. The hearings conducted by the circuit court comported with the requirements of due process of law and were consistent with the general purpose of the Inland Lake Level Act of 1961, which is to provide for the control and maintenance of inland lake levels for the benefit and welfare of the public. The hearings need not have been conducted as a full trial.

3. Testimony at the hearings sufficiently established that the parcels of property which were included in the special assessment district do receive a benefit from the improvement and that the parcels excluded from the special assessment district do not receive a similar benefit.

Affirmed.

1. TAXATION — SPECIAL ASSESSMENT DISTRICT — INLAND LAKE LEVEL ACT.

The Inland Lake Level Act of 1961 authorizes the creation of a special assessment district by petition to a court, so long as the creation of the district is preceded by a determination of a lake's normal level; special assessment districts are authorized even where the lake level is identical to that determined prior to the effective date of the 1961 act and where the structure to be maintained is in existence prior to the creation of the special assessment district (MCL 281.61 *et seq.;* MSA 11.300[1] *et seq.).*

2. TAXATION — SPECIAL ASSESSMENT DISTRICT — INLAND LAKE LEVEL ACT — DUE PROCESS.

Hearings conducted by a court on a petition by a county drain commissioner under the Inland Lake Level Act of 1961 to determine the normal height and water level of a lake for purposes of creating a special assessment district need not be conducted as a full trial; however, the hearings must comport with the requirements of due process of law and must comply with the notice and hearing requirements of the Inland Lake Level Act of 1961 (MCL 281.70; MSA 11.300[10]).

3. STATUTES — INLAND LAKE LEVEL ACT.

The purpose of the Inland Lake Level Act of 1961 is to provide for the control and maintenance of inland lake levels for the benefit and welfare of the public; read as a whole, the act essentially authorizes counties to make policy decisions as to

the levels of their inland lakes, and build and finance dams as necessary to maintain the desired lake levels; the focus of the act is clearly on the public welfare and not on individual riparian rights; the act does not create a civil cause of action for individuals who are dissatisfied with a county's exercise of authority (MCL 281.61 *et seq.;* MSA 11.300[1] *et seq.).*

*Ronald R. Tyler,* for petitioner.

*Robert J. Eppert,* for respondent.

Before: M. J. KELLY, P.J. and ALLEN and R. M. SHUSTER,* JJ.

M. J. KELLY, P.J. This is an action under § 10 of the Inland Lake Level Act of 1961, MCL 281.61 *et seq.;* MSA 11.300(1) *et seq.,* in which the Iosco County Drain Commissioner seeks to determine the normal height and water level of Van Ettan Lake and create a special assessment district to finance the maintenance of the Van Ettan Lake dam. Respondent Van Ettan Lake Association is comprised of individual property owners whose interests were affected by the creation of the special assessment district. The circuit court granted petitioner's requests and respondent appeals as of right. We affirm.

The following facts are not in dispute and are taken from the concise statement of facts stipulated to by the parties below. On March 18, 1983, petitioner filed a complaint in circuit court to determine the "normal level" of Van Ettan Lake and to establish a special assessment district as authorized under MCL 281.79; MSA 11.300(19). The Van Ettan Lake dam was constructed in the mid-1940's to maintain a water level of 589.2 feet above sea level as required by a December, 1944, order of the Iosco County Circuit Court. As the

* Circuit judge, sitting on the Court of Appeals by assignment.

result of an action later filed against the Iosco County Board of Supervisors by a riparian landowner below the dam, another order was entered in December of 1957 determining that the level of the lake would be reduced in late summer and drawn down to an elevation of 585.1 feet above sea level to permit the natural rise during the fall, winter and spring months to a maximum elevation of 592 feet.

A hearing was conducted in this case on June 14, 1983, at which petitioner presented the testimony of two employees of the Michigan Department of Natural Resources as well as the testimony of an engineer employed by the drain commissioner. Following the testimony of these individuals, the court inquired whether counsel for the landowners or any individual landowners present in the courtroom objected to the DNR's proposed normal levels of 589.2 feet above sea level, reduced to 585.1 feet in the winter months. Counsel for all parties agreed that there were no objections to these lake levels proposed in petitioner's complaint, provided that the order entered would also require the dam to be operated in accordance with a 1955 DNR report.

Petitioner also presented proofs at the June 14, 1983, hearing in support of his proposed special assessment district. When the petitioner rested, the trial court indicated that it desired additional proofs regarding rights to access to the lake on the part of certain back lot owners who had been included within the proposed special assessment district.

The hearing reconvened on July 1, 1983, and the court allowed the petitioner to reopen proofs and introduce evidence relating to the rights of back lot owners to private access to the lake. After the petitioner rested a second time, several parties

moved unsuccessfully to dismiss the complaint and filed application for leave to appeal to this Court, which was denied by order of March 1, 1984.

Further proceedings were conducted on June 20, 1984, and the trial court issued its opinion on July 17, 1984, establishing the normal lake level to be 589.2 feet, seasonally reduced to 585.1 feet, with a maximum level of 592 feet. The court created a special assessment district as proposed by the petitioner, but excluded from the district certain parcels of property described later in this opinion.

On appeal, respondents argue that the trial court lacked jurisdiction to hear this matter because the petitioner has never sought to change the lake level as previously determined by the court. Respondents further argue that even if jurisdiction were properly obtained, the trial court erred by failing to conduct the § 10 hearing as a full trial, with rights of cross-examination and application of the Michigan Rules of Evidence. Finally, respondents take issue with the substantive findings of the court on the grounds that (1) the evidence did not sufficiently establish that property included in the special assessment district specially benefitted from proximity to the lake and (2) the special assessment district is underrepresented by the court's exclusion of various subdivisions. We address these arguments in order.

Respondent's jurisdictional argument is without merit. Essentially, respondents argue that because the county did not petition for a change in the normal height and water level of Van Ettan Lake, as previously determined by the circuit court under the statute in effect prior to 1961, the circuit court was without authority in 1983 to change the method of financing maintenance of the existing dam. Since its construction, the Van Ettan Lake

dam had been financially maintained by the entire county.

It is true that petitioner's complaint set forth height and level determinations identical to those already in place under the 1944 and 1957 orders. It is also true that the petitioner's complaint does not indicate the need for any new construction. We think it evident that the sole purpose of this proceeding is to change the source of financing for the Van Ettan Lake dam. Respondents have failed to persuade us, however, that the county's purpose in instituting this proceeding is contrary to the authority granted it under the Inland Lake Level Act. There is no express language in the statute limiting the authority of the circuit court to confirm special assessment districts only where there is a change in the lake level or only where a new structure is required for maintenance of the same level. Section 10 merely requires the court to determine the lake level before confirming a special assessment district.

Moreover, § 19 of the act expressly provides:

"The expense of determining the normal height and water level of any public inland lake, the expense of constructing and maintaining any dam, together with the cost and expense of acquiring lands and other property by condemnation necessary thereto, may be assessed, levied and collected upon the taxable property within the special assessment district." MCL 281.79; MSA 11.300(19).

Section 19 in its original form provided that the cost of constructing and maintaining a dam under the 1961 act "may be assessed, levied and collected upon the taxable property of the county, the same as other general taxes are assessed, levied and collected in such county". Financing through special assessment districts was authorized pursuant

to a 1969 amendment. We think that if the Legislature had intended to authorize the creation of special assessment districts only where the county sought to change a previous determination, build a new structure or determine a lake level for the first time, it could easily have said so in the 1969 amendment.

Respondent's jurisdictional argument is frustrated not only by the terms of the statute but by the case law as well. Respondent's reliance on *Niles v Meeker,* 219 Mich 361, 368; 189 NW 207 (1922), is misplaced since, in that case, the Supreme Court held that the county had no authority under the predecessor statute to construct a proposed dam because it had failed to first obtain a determination of the natural height and water level and had failed to substantiate on the record the benefit of the dam to the navigability of the lake or to the public health or welfare of the county. Petitioner met both requirements in the instant case.

A case more on point with the situation here is *Missaukee County Board of Comm'rs v Nyland,* 45 Mich App 307; 206 NW2d 543 (1973), *lv den* 390 Mich 799 (1973), upon which the trial court also relied in rejecting respondent's argument. In *Nyland,* the county created a special assessment district to finance a new outlet in Lake Missaukee in order to maintain the normal height and water level as it had been determined in 1942. There, as here, the county did not seek to change the level determination though, unlike this case, the county did propose the construction of a new structure. This Court held in relevant part:

"No property rights were acquired under the 1942 order. At the time the 1942 order was entered the expenses of maintaining the lake level were to be borne

by the county as a whole. However, this did not prevent a change in the law to provide for financing by special assessment." 45 Mich App 308-309.

We adopt this analysis for purposes of the instant case and hold that the Inland Lake Level Act of 1961 authorizes the creation of a special assessment district, so long as the creation of the district is preceded by a determination of the normal lake level. Special assessment districts are authorized even where the lake level is identical to that determined prior to the effective date of the 1961 act and where the structure to be maintained is in existence prior to the creation of the special assessment district.

Respondent next argues that the Inland Lake Level Act guarantees interested parties a full trial on the merits of (1) the lake level determination and (2) the boundaries of the special assessment district. At the June 14, 1983, hearing conducted in this case, respondent sought to cross-examine the two DNR witnesses and specifically objected to the admission of various reports and documents on the basis of hearsay. The trial court ruled that the proceeding was a "statutory hearing" and not a judicial trial, denied cross-examination of the two DNR witnesses and allowed the admission of reports and documents which were objected to, on the theory that the hearsay rule did not apply. The court did, on the other hand, allow respondent to cross-examine the civil engineer produced by petitioner as well as the Oscoda Township assessor. On appeal, respondent argues that the act guarantees a "judicial" proceeding, *i.e.*, a full trial with rights of cross-examination and application of the Michigan Rules of Evidence.

While the parties argue this issue by referring to and distinguishing proceedings according to

whether they are "judicial", "statutory" or "political" in nature, the use of these terms may be confusing and misleading and we prefer instead to frame the issues as whether the hearing conducted in this case comports with the requirements of due process of law and is consistent with the general purpose of the Inland Lake Level Act.

Section 10 of the act guarantees notice and opportunity to be heard prior to the determination of normal heights and water level and prior to the creation of a special assessment district. Notice of the filing of a petition and notice of the date of hearing must be published in one or more newspapers of general circulation in the county or counties affected at least once a week for six successive weeks prior to the date set for hearing. MCL 281.70; MSA 11.300(10). Section 10 further provides:

"The court shall hear proofs and allegations of all parties interested. The court shall determine the level to be established and maintained and shall have continuing jurisdiction and may provide for departure from the normal level as may be necessary to accomplish the purposes of this act. The court shall confirm the special assessment district boundaries within 60 days following the lake level determination." MCL 281.70; MSA 11.300(10).

We are not persuaded that the hearing contemplated under this provision requires a full trial.

The purpose of the Inland Lake Level Act is to provide for the control and maintenance of inland lake levels for the benefit and welfare of the public. *In re Martiny Lakes Project,* 381 Mich 180, 187; 160 NW2d 909 (1968); *Lenawee Board of Comm'rs v Abraham,* 93 Mich App 774, 779; 287 NW2d 371 (1979). Read as a whole, the act essentially authorizes counties to make policy decisions

as to the levels of their inland lakes, and build and finance dams as necessary to maintain the desired lake levels. It cannot reasonably be argued that the purpose of the act is to also create or protect individual rights as to inland lake levels. The focus of the act is clearly on the public welfare and not on individual riparian rights. The act does not create a civil cause of action for individuals who are dissatisfied with the county's exercise of authority.

Given the public purpose of the Inland Lake Level Act, we conclude that the interests sought to be protected by the notice and hearing provision of § 10 are those which the public has in being apprised of governmental actions and in having the opportunity to present opposing viewpoints. The public is, of course, made up of competing interests and the hearing provided by § 10 of the act guarantees that all of these interests have the opportunity to be heard by the county before a policy decision is put into effect.

The nature of the interests sought to be protected by the notice and hearing requirements of § 10 will determine the type of hearing required. The right to due process of law, including notice and hearing, is a flexible concept and must be analyzed in light of the particular circumstances presented in a given situation. As the Supreme Court has noted, "while we may recognize that some kind of hearing is due, the nature and timing of such hearing must be determined according to the relationship of the interests involved". *Westland Convalescent Center v Blue Cross & Blue Shield of Michigan,* 414 Mich 247, 261, 267; 324 NW2d 851 (1982). We think that the interests involved in determining inland lake levels and in creating special assessment districts do not require that the hearing be conducted as a full trial. A

hearing at which all interested parties may present evidence and arguments allows the circuit court to (1) ensure that the county has considered the varying public interests in reaching its policy decision and (2) protect the public against arbitrary governmental action.

The hearing actually conducted in this case comports with these principles of due process and with the requirements of § 10 of the Inland Lake Level Act. The lake level determination was not in dispute as all parties agreed to maintain the 1947 and 1954 levels. Moreover, as to the second phase of the hearing at which the court considered the creation of the special district, the court went beyond the requirements of the statute in accepting evidence, allowing cross-examination, and in scheduling an additional hearing to allow the back lot owners to present evidence regarding access.

Testimony submitted at the hearings sufficiently established that the parcels of property included in the special assessment district do receive a benefit from the improvement. *Crampton v Royal Oak,* 362 Mich 503, 516; 108 NW2d 16 (1961); *Rice v Oakland County Drain Comm'r,* 16 Mich App 406; 168 NW2d 302 (1969). All of the property surrounding the lake was included in the special assessment district. The district also included every parcel of property which was legally described as having an easement to the lake, as well as back lots with foot paths leading to the lake. Moreover, in light of testimony regarding the unstable lake level and improper maintenance in recent years, it must be concluded that although the normal lake level will not differ from that established by the prior court order, the maintenance and care of the dam and the lake will improve, flooding will be prevented and property owners will be better able to enjoy the lake and their property. Finally, the

evidence supports the trial court's exclusion of certain subdivision properties from the district because of the lack of related benefits.

Affirmed.