*In re* PROJECT COST AND SPECIAL ASSESSMENT ROLL
FOR CHAPPEL DAM

Docket No. 280236. Submitted January 7, 2009, at Lansing. Decided
January 22, 2009, at 9:00 a.m.

The Gladwin County Board of Commissioners approved a special
assessment on private property owners in the Chappel Dam assess-
ment district for the repair of the dam, as calculated by the Gladwin
County drain commissioner, who spread the cost of repairs among the
property owners, Sage Township, and Gladwin County. The property
owners filed a petition challenging the special assessment in the
Gladwin Circuit Court. The court, Roy G. Mienk, J., granted a motion
by the drain commissioner and the county board of commissioners to
affirm the assessment and dismissed the property owners' petition.
The property owners appealed.

The Court of Appeals *held*:

1. The Inland Lake Level Act, MCL 324.30701 *et seq.*, autho-
rizes counties to make policy determinations regarding the levels
of their inland lakes and to build and finance dams as necessary for
maintaining desired lake levels. MCL 324.30714(4) of the ILLA
provides that a special assessment roll with the assessments listed
shall be final and conclusive unless appealed in a court within 15
days after county board approval. Although MCL 324.30705(1) of
the ILLA provides that the procedures of the Drain Code, MCL
280.1 *et seq.*, are to be followed as close as possible in proceedings
for levying special assessments and issuing assessment bonds, the
ILLA does not provide that the appellate procedures of the Drain
Code must be used in appeals of special assessment rolls for the
establishment or maintenance of inland lake levels and dams. The
circuit court properly determined that the appeal procedure was
not subject to the requirements of the Drain Code.

2. The circuit court properly determined that the appeal in this
case is governed by MCR 7.105. That court rule applies to
administrative proceedings, the proceedings in this case are analo-
gous to proceedings under the Drain Code, and Drain Code
proceedings are administrative proceedings.

3. A hearing conducted pursuant to the ILLA satisfies due
process requirements if it allows a circuit court to ensure that a

county has considered the varying public interests in reaching its policy decision and protects the public against arbitrary governmental action. The property owners in this case were not deprived of their rights to due process of law. They were provided notice of, and an opportunity to be heard at, the hearing conducted by the drain commissioner, the meeting held by the county board of commissioners, and the hearing conducted by the circuit court.

Affirmed.

TAXATION — INLAND LAKE LEVEL ACT — SPECIAL ASSESSMENTS — CIRCUIT COURT REVIEW.

An appeal in the circuit court of a special assessment roll approved by a county board of commissioners pursuant to the Inland Lake Level Act is not governed by the appellate procedures specified in the Drain Code; the court rule on appeals from administrative agencies in contested cases applies to such an appeal (MCL 324.30714[4]; MCR 7.105).

*David E. Oppliger, PLLC* (by *David W. Oppliger*), for private property owners in the Chappel Dam assessment district.

*Braun Kendrick Finkbeiner, P.L.C.* (by *C. Patrick Kaltenbach* and *William S. Cook*), for the Gladwin County Drain Commissioner and the Gladwin County Board of Commissioners.

Before: MURRAY, P.J., and O'CONNELL and DAVIS, JJ.

PER CURIAM. Petitioners appeal as of right an order of the circuit court granting respondents' motion to affirm respondents' special assessment roll and dismissing petitioners' appeal of the special assessment roll. We affirm.

### I. FACTS

Chappel Dam is located on Wiggins Lake in Sage Township, Gladwin County. As far back as 2001, the Department of Environmental Quality communicated

with the Gladwin County Drain Commissioner, Sherry Augustine, that Chappel Dam required substantial repair and was a public health hazard. The costs of repairing the dam were estimated at $2.04 million and were to be divided among the property owners in a special assessment district, the county, and the township. The apportionment of the costs was computed on the basis of a determination of the relative benefit that each of the entities derived from the lake. The drain commissioner determined that two percent of the costs would be paid by the county, three percent by the township, and 95 percent by the property owners in the special assessment district. In previous special assessment rolls regarding the lake, the county was assessed 25 percent of the costs.

After determining the apportionment, pursuant to the Inland Lake Level Act (ILLA), MCL 324.30701 *et seq.*, the drain commissioner held a public hearing in which many property owners in the Chappel Dam assessment district protested the apportionment. The next day the Gladwin County Board of Commissioners approved the special assessment roll, and ten days later respondents filed an appeal of the special assessment roll in the Gladwin Circuit Court. Seven days after the filing, a hearing was held and the parties were given five more days to file supplemental briefs. The circuit court then granted respondents' motion to affirm and dismissed petitioners' appeal. In affirming, the circuit court concluded that the commissioner's determination was rationally based, supported by more than a scintilla or preponderance of the evidence, and not arbitrary, capricious, fraudulent, or manifest error. The court determined that the commissioner properly based the apportionment on statewide research, lot size, and relative benefit derived from the lake.

II. ANALYSIS

On appeal, petitioners' arguments focus on how this case was handled procedurally by the circuit court. Specifically, petitioners' argument is that the circuit court erred by not applying the statutory review procedures set forth in the Drain Code, MCL 280.1 *et seq.*, and misapplied the court rules by not allowing 14 days for petitioners to respond to respondents' motion to affirm. Therefore, petitioners claim, they were denied their due process rights without an opportunity to present evidence and question the drain commissioner to establish that the special assessment rolls were arbitrarily established. Questions of law are reviewed de novo, *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998), and statutory interpretation is a question of law. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 393; 651 NW2d 756 (2002).

As noted, petitioners challenge the process used in the appeal of the special assessment roll. The special assessment roll was determined to be in compliance with the procedures of the ILLA.[1] As a whole, the act authorizes counties to make policy determinations regarding the levels of their inland lakes and to build and finance dams as necessary to maintain the desired lake levels. *In re Van Ettan Lake*, 149 Mich App 517, 525-526; 386 NW2d 572 (1986). The initial appeal of the special assessment roll was filed in the circuit court in compliance with the ILLA. MCL 324.30714(4). In hearing and deciding respondents' motion to affirm and dismissing the case, the circuit court relied on court

---

[1] The ILLA, MCL 281.61 to 281.86, was repealed in 1994 and reenacted without substantive change as Part 307 of the Natural Resource Environmental Protection Act in 1995. MCL 324.30701 *et seq.*; see *Yee, supra* at 386.

rules governing appeals from administrative agencies in contested cases. MCR 7.105.

Petitioners assert that the circuit court abrogated the appeals process by not following the appeals procedures provided in the Drain Code as mandated by the ILLA. The ILLA states in part:

> The special assessment district may issue bonds or lake level orders in anticipation of special assessments. All proceedings relating to the making, levying, and collection of special assessments authorized by this part and the issuance of bonds or lake level orders in anticipation of the collection of bonds or orders shall conform as nearly as possible to the proceedings for levying special assessments and issuing special assessment bonds or lake level orders as set forth in the drain code of 1956, 1956 PA 40, MCL 280.1 to 280.630. [MCL 324.30705(1).]

The Drain Code provides the following procedure for appeal in the probate court:

> The owner of any land in the drainage district or any city, township, village, district or county having control of any highway which may feel aggrieved by the apportionment of benefits so made by the commissioner, may, within 10 days after the day of review of such apportionments, appeal therefrom and for such purpose make an application to the probate court of the proper county for the appointment of a board of review, by filing with said probate court a notice of appeal and at the same time filing with said court a bond in such sum as the judge of probate may require, with 1 or more sureties to be approved by the judge of probate, conditioned upon the payment of all costs in case the apportionment made by the commissioner shall be sustained. . . . [MCL 280.155.]

Then a three-person panel is appointed by the probate court to review the apportionment:

> The probate court upon receipt of any such application as hereinbefore provided for shall forthwith notify the

commissioner in writing of such appeal, and shall thereupon make an order appointing 3 disinterested and competent freeholders of such county, not residents of the township or townships affected by said drain, as members of a board of review. The persons so appointed shall constitute the board of review. The court shall thereupon, with the concurrence of the commissioner, immediately fix the time and place when and where said board of review shall meet to review said apportionments, which time shall not be less than 10 nor more than 15 days from the date of filing such appeal. The commissioner shall thereupon give notice to the persons so appointed of their appointment and of the time and place of meeting, and shall give notice of such meeting by posting notices in at least 5 public places in each township forming a part of the drainage district, and shall serve a like notice upon the appellant if he be a resident of any township affected. Such notice shall be made not less than 5 days before the day of hearing and shall be made by personal service. Proof of service of notice of appeal shall be made by the person serving said notice and be filed in the office of the judge of probate. At such hearing the board of review shall have the right, and it shall be their duty, to review all apportionments for benefits made by the commissioner on such drain. The persons so appointed shall be sworn by the commissioner to faithfully discharge the duties of such board of review. [MCL 280.156.]

In contrast, the ILLA provides a less elaborate mechanism for review. It states, "The special assessment roll with the assessments listed shall be final and conclusive unless appealed in a court within 15 days after county board approval." MCL 324.30714(4).

The circuit court's interpretation of the statutes was that the Legislature specifically provided for a circuit court review and knowingly excluded from the ILLA the Drain Code's procedures for review. We agree.

Statutory language can be rendered ambiguous by its interaction with other statutes. *Ross v Modern Mirror*

*& Glass Co*, 268 Mich App 558, 562; 710 NW2d 59 (2005). Statutes that relate to the same subject matter or share a common purpose are *in pari materia* and must be read together as one law. *People v Buehler*, 477 Mich 18, 26; 727 NW2d 127 (2007). The object of the *in pari materia* rule is to effectuate the legislative purpose as found in harmonious statutes. *People v Shakur*, 280 Mich App 203, 209-210; 760 NW2d 272 (2008). If two statutes lend themselves to a construction that avoids conflict, that construction should control. *Id.*

The primary goal of judicial interpretation of statutes is to determine and implement the intent of the Legislature. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). In *Yee*, this Court determined that the purpose of the ILLA is " 'to provide for the determination and maintenance of the normal height and level of the waters in inland lakes of this state, for the protection of the public health, safety and welfare and the conservation of the natural resources of this state.' " *Yee, supra* at 396 (citation omitted). By enacting such a comprehensive scheme for the establishment and maintenance of legal lake levels, including the maintenance of dams, the Legislature has signified its intent to give the circuit court sole authority to review such a proceeding. See *id.* at 395-396, 398. Conversely, the Drain Code provides "a full and complete procedure for reviewing the drain proceedings and, in the absence of fraud, the statutory procedures and the reviews provided are exclusive." *Battjes Builders v Kent Co Drain Comm'r*, 15 Mich App 618, 624; 167 NW2d 123 (1969).

The specific words of the Drain Code state that any owner of land in a drainage district may appeal an apportionment and a board of review will consider the benefits of the drain. See MCL 280.155; MCL 280.156.

The statute clearly refers to reviewing the apportionment for establishing a drain. The ILLA, in contrast, specifically provides for the maintenance of water levels and dams and provides a review process. It is apparent that the Legislature has provided different review procedures for drains and dams.

Petitioners maintain that the ILLA states that the Drain Code appeal procedures must be used. However, the ILLA imposes no such requirement. Instead, the ILLA provides for the use of Drain Code procedures to be followed as close as possible in the "proceedings for levying special assessments and issuing special assessment bonds . . . ." MCL 324.30705(1). Rather than repeat the procedures for levying special assessments, the Legislature refers those who use the ILLA for lake levels to the Drain Code for details of how to issue a special assessment, regardless of the purpose. Similarly, the Legislature provided for a notice of hearing in the ILLA and then referred users to tax provisions to detail the exact process of providing notice. MCL 324.30714(2)(b). The ILLA makes no such reference to the Drain Code concerning the review process. We therefore agree with the circuit court that a harmonious reading of the ILLA and the Drain Code is that the ILLA refers to the Drain Code for the procedures to levy special assessments and issue special assessment bonds, but provides different appeal procedures for the establishment of dams and the establishment and maintenance of lake levels.

We also agree with the trial court that MCR 7.105 is the most applicable court rule to this type of appeal because the appeal was filed in circuit court and proceedings under the analogous Drain Code, other than condemnation proceedings, are administrative proceedings. *Barak v Oakland Co Drain Comm'r*, 246 Mich App

591, 597; 633 NW2d 489 (2001).[2] Moreover, none of the other rules within MCR 7.101 *et seq.* applies. Since MCR 7.105(L) allows a trial court to shorten the time for briefs and hearings—a fact conceded by petitioners in the trial court—the 11-day period used by the trial court was permissible.

Petitioners also assert, citing *Westland Convalescent Ctr v Blue Cross & Blue Shield of Michigan,* 414 Mich 247, 268; 324 NW2d 851 (1982), that the review process used in this case deprived them of their constitutional right to due process of law, in that they should have had an opportunity to develop facts and to cross-examine the drain commissioner about the decision she made. What kind of hearing is due depends on the interests involved. *Id.* at 267. The right to due process of law is a flexible concept and must be analyzed by considering the particular circumstances presented in a given situation. *In re Van Ettan Lake, supra* at 526.

The ILLA guarantees notice and an opportunity to be heard before the determination of a special assessment roll. MCL 324.30714. This Court has determined that the hearing contemplated under the ILLA does not require a full trial. In *In re Van Ettan Lake, supra* at 526-527, this Court determined that the interests being protected by a hearing under the ILLA are those of the public being apprised of governmental actions and having an opportunity to present opposing viewpoints. This Court explained that the focus of the act is clearly on the public welfare, and not on individual riparian rights, because its purpose is to authorizes counties to make policy decisions about inland lake levels, and build and finance dams as necessary to maintain the desired lake levels. *Id.* at 525-526. In *Barak, supra* at

---

[2] The Drain Code was one of three parts of Michigan law that determined the special assessment roll procedures.

602, this Court held that the role of the trial court in a Drain Code proceeding is limited to reviewing the record for competent, material, and substantial evidence supporting the commissioner's decision. This Court concluded that the trial court adequately made its determination by reviewing the matter pursuant to a motion for summary disposition. *Id.*

For purposes of the ILLA, a sufficient hearing is one that (1) allows the circuit court to ensure that the county has considered the varying public interests in reaching its policy decision and (2) protects the public against arbitrary governmental action. *In re Van Ettan Lake, supra* at 526-527. Here, all interested persons were properly notified of the hearing regarding the special assessment roll. A hearing was held at which petitioners registered their protests and the reasons for protesting, and the commissioner explained and took questions about her apportionment. The petitioners then had an opportunity to be heard at the county commissioners' meeting in which the roll was approved. Lastly, petitioners presented their arguments in a trial brief and at the hearing on the motion before the circuit court. The court considered all the evidence and welcomed any pertinent information in the parties' briefs. Opportunity to be heard was provided, and the court then decided that there was sufficient evidence to support the commissioners' decision.[3] Accordingly, petitioners were not denied their constitutional rights to due process of law.

No costs are awarded; a public question was involved. MCR 7.219(A).

Affirmed.

---

[3] Again, this substantive issue is not before us.